### JUENGST v. GULLBERG et al.

(Circuit Court, S. D. New York. June 7, 1909.)

1. PATENTS (§ 240*)—INFRINGEMENT—IMPROVEMENT PATENT.
    Where a patent does not embody a primary invention, but only an improvement on the prior art, and the defendant's machine can be differentiated, the charge of infringement is not sustained.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 240.*]

2. PATENTS (§ 328*)—INFRINGEMENT—SIGNATURE GATHERING MACHINE.
    The Juengst patent, No. 761,496, for a signature gathering machine, discloses patentable invention but is an improvement patent, limited by the prior art to the single novel feature of the adjustability of the gripper jaws. As so construed, held not infringed.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Fenelon B. Brock, for complainant.
Wm. E. Warland, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARTIN, District Judge. The complainant alleges that the defendants have infringed his letters patent No. 761,496, issued on the 31st day of May, 1904, covering a signature gathering machine. Printed sheets, as they come from a printing machine, are usually folded once or more. These folded sheets are known to the trade as "signatures." They may be in pamphlets or simply sheets. They are gathered to form a book or magazine. A signature gathering machine takes these several sheets or pamphlets automatically and assembles them for the book or magazine. As these sheets or pamphlets called "signatures" are frequently imperfect, by leaves being missing or too many present, it is essential that the machine be so constructed that it shall gather only perfect signatures, and that imperfect signatures may be detected in such a manner that the error may be readily corrected. The machine must be adjusted for a predetermined thickness of the signatures, and if there is a deviation from that it must be detected. The complainant claims that his patent covers such a machine, and this the defendant does not deny, but asserts that prior patents involve the same principles, and, therefore, the complainant's machine is nonpatentable. The defendant further asserts that, if the complainant has a patentable machine, it exists only in the adjustability of the gripper jaws, which device he has not infringed.

The complainant offered no machine as an exhibit, but used in argument certain drawings from the figures of the patent, and a small model, which model to my mind was of little practical benefit. As I understand the patent in suit from figure 1, the gripper lever is marked D and is secured on a rock shaft, $A^6$. Lever D contains a pair of jaws, $D^2$–$D^{12}$, which work on a pivot, 13. The lower jaw is connected with a rod, $D^3$, and at the end of this rod is a screw cap, $D^7$, upon which is nut, $D^6$, over the screw cap in the rod $D^4$, and threaded into rod $D^3$. These parts are adjustable by the nut, $D^7$, so that the jaws may be opened to a greater or less distance, whereby they are to take signatures of predetermined thickness. Arm $D^{15}$ connects with rod $D^4$, and at the end of this arm is a point, $D^{16}$. When the machine is adjusted for work and signatures are taken by the gripper jaws that are of correct thickness, the detector finger, $D^{16}$, at the end of the arm, $D^{15}$, passes through a gate on the lever, B, which is formed by plates $B^3$ and $B^4$. If a signature is reached which is either too thick or too thin—varies from a predetermined thickness—finger $D^{16}$ on the end of the arm $D^{15}$ will fail to pass through the gate. When this occurs, $D^{16}$ comes in contact with one of the plates, $B^3$ or $B^4$, throws down the lever, B, which contacts with lever, C, and stops the motion or disconnects. It seems unnecessary to describe the machine further as to the manner of giving the signal, etc.

The complainant's patent seems to rest upon the adjustability of the gripper jaws, as the same are connected with detective and signaling mechanism. While this principle may be found in prior patents in use in different kinds of machines, the complainant seems to have been first to apply it to a signature gathering machine. So

well developed, however, was the prior art, that his patent must be limited to this device. If we were to broaden it to equivalents sufficient to cover the defendant's device, and apply a like doctrine of equivalents to prior patents, said prior patents would embody every element of the complainant's claimed invention.

Does the defendant's machine infringe this device of the complainant's machine?

The defendant produced as an exhibit a machine, the working of which was plain and simple. In his machine the gripper lever, D, is attached to a rock shaft, $A^6$. It has two jaws, marked in the drawings $D^2$ and $D^{12}$, which always open the same width—about half an inch. They are opened and closed by a pin marked 4, which slides through the lever, D, and abuts against toggle $D^{17}$. The other end abuts against stop 2 and in the opposite side of gripper lever, D. When the sliding pin, 4, strikes stop 2, it is forced against the upper part of toggle $D^{17}$, and in connection with spring $D^5$ serves to bring the jaws together on the signature. Lever B is hung on pin 26 and has two prolongations pivoted on different centers. At the end of these prolongations are fastened adjustable dogs, $B^3$ and $B^4$. In the defendant's machine the gripper jaws always open to the full extent. No adjustment of these jaws is essential. In setting the defendant's machine for predetermined thickness of signatures, the adjustment is made by these dogs being moved a greater or less distance apart further up or down on members B, as necessary to permit the detector finger, $D^{16}$, to pass between parts $B^3$ and $B^4$ when the machine is working normally. When the signature grasped by the jaws of the defendant's machine is too thick or too thin, the finger, D, contacts with either the dog $B^3$ or $B^4$, and throws part B with the dogs $B^3$ and $B^4$ into a position whereby rod C is connected with bar $K^7$ and contacts with link or dog 10, and thus connects the bar $K^4$ and handle 20 and rod 11, which throws the machine out of gear and stops.

The defendant's expert very aptly described the operation as follows:

"At this point I wish to call attention to the fact that in the machine of the patent in suit all the mechanism is mounted on a single rock shaft, $A^6$; that is to say, the gripper lever, the arms C, which actuate the stop mechanism, and the arm B, which has a curved extension on which the adjustable plates are secured. This is not at all the case in defendant's machine. In the defendant's machine there is a rock shaft, and means are provided for rocking the shaft, and that shaft carries nothing, absolutely nothing, but the gripper lever. The means that are tripped by the grippers when the machine operates abnormally are not supported by this rock shaft, nor have any connection with it, but are carried by two rigid rods or bars which have no movement whatever. The arms which are thrown by the tripping device when the machine operates abnormally are mounted on another entirely independent rock shaft, having no connection whatever with the rock shaft which carries the gripper lever. It is an absolute and fundamental difference between the construction of defendant's machine and what is set forth in the patent in suit. * * *

"The adjustment of the dogs in defendant's machine permits of a much finer adjustment than the adjustment of the jaws (of the complainant's machine). It permits of a much safer adjustment, as the engagement between the dog and the finger during the movement of the parts becomes an abso-

lutely positive one, and accidental mistakes in the slipping and consequent disengagement of the finger and dog is precluded. It is much simpler in construction. It is more easily made; that is to say, the operator can make this adjustment with greater facility. The adjusted or adjusting parts are not subjected to the wear and tear caused by the violent opening and closing of the jaws and the concussion caused by the closing of the jaws on paper. In defendant's machine the jar or concussion incident to the opening and closing of the jaws, which takes place with considerable force, does not affect the parts carrying the dogs, on which part the adjustment is made. In the machine of the patent in suit the adjustment is made by means of the parts D³ and D⁴—I mean the adjustment of the jaws—which parts, D³ and D⁴, are the ones which transmit the motion of opening and closing the jaws, and hence these parts are subjected to all the shock and vibration and concussion incident to the constant, forcible, and sudden opening and closing of the jaws. In the defendant's machine such opening and closing of the jaws under greater or less force cannot loosen or change the adjustment of the dogs carried by an entirely independent member and in no way whatever connected with the shaft supporting and operating the jaws. In the machine of the patent in suit, and as there claimed, and as there distinctly pointed out, the entire motion for opening and closing the jaws is imparted to the jaws through and by means of the members D³ and D⁴, and by these means only. These means are adjustable, and it stands to reason that this adjustment, or the parts causing the adjustment, are subjected to the concussion, jars, and vibrations produced by the opening and closing of the jaws, and hence are much more apt to get out of adjustment than the dogs of defendant's machine, which are in no way subjected to these particular concussions, jars, and vibrations to which the jaw-adjusting parts in the machine of the patent in suit are subjected during the operation of the machine. These are some of the reasons why I consider the adjustment of the dogs on separate and independent members mechanically far superior to the adjustment of the jaws themselves."

It is claimed by the complainant that the adjustment of the defendant's machine can be made by D³ and D⁴, and that this adjustment comes squarely within the complainant's patent. I am satisfied, however, from the evidence, that the defendant's machine was not intended to be adjusted in that manner. It surely is not practicable thus to do. The adjustment is by the dogs. No operator would ever undertake to adjust the defendant's machine in any other manner than by the dogs, and such adjustment was intended by the constructor of the machine. If the complainant's machine involves a new principle at all, it is the adjustability applicable to the gripper jaws.

It appears from the evidence that, prior to the application of the complainant for the patent in suit, there were signature gathering machines on the market involving the same principles in their detective devices as are involved in the complainant's patent and also in the defendant's machine—a mechanism consisting of one member passing between two other members, and when an abnormal condition arises the moving member comes in contact with one or the other of the detector members, which stops the machine. The complainant is not a pioneer in the adjustable calibrating means for controlling the stop mechanism of paper handling machines. In view of this known art, the complainant's patent is necessarily limited. As I view this case, both the complainant and defendant are improvers in an advanced art, each accomplishing the same final result, and as inventors they are each limited. It is a well-settled principle of law that:

"Where the patent does not embody a primary invention, but only an improvement on the prior art, and the defendant's machine can be differentiated, the charge of infringement is not sustained." Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689, cited with approval by Justice Day in Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. on page 414, 25 Sup. Ct. 697, 49 L. Ed. 1100.

Such claims of the complainant's patent as may be construed broadly enough to cover the defendant's machine must be held invalid for lack of novelty.

The defendant may have decree.